JOHNNY HAMMONDS V. STATE.

No. 29,679. May 7, 1958.
Appellant's Motion for Rehearing Overruled
June 25, 1958.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) October 15, 1958.

*Tom K. Bamford, Charles H. Hardeman,* and *Robert C. Benavides,* all of Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *Jack Cole,* Dallas, *Homer Montgomery, A. D. Jim Bowie,* Assistants District Attorneys, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is the unlawful sale of heroin, a narcotic drug; the punishment, thirty-five years.

The sufficiency of the evidence being challenged, the testimony must be appraised in the light most favorable to the jury's findings.

The indictment alleged that appellant and Elizabeth Ann Johnson, acting together, sold heroin to Dan Evans. The court charged on the law of principals and, in applying the law, authorized a conviction upon a finding that appellant, acting to-

gether with Elizabeth Ann Johnson, did unlawfully sell heroin to Dan Evans.

Elizabeth Ann Johnson, who the testimony shows had been convicted for her part in such sale of heroin, testified as a witness for the state.

The jury was not instructed that she was an accomplice witness whose testimony required corroboration, and no such charge was requested, and the omission of such charge was not complained of.

Appellant correctly contends that though he may not complain in this court of the omission of the charge mentioned, this court, in passing upon the sufficiency of the evidence, must treat the testimony of Elizabeth Ann Johnson as that of an accomplice witness and find sufficient evidence from other sources tending to connect appellant with the commission of the offense; that is, find that her testimony was corroborated. Pitts v. State, 85 Texas Cr. Rep. 14, 210 S. W. 199.

Appellant did not testify.

Dan Evans, "undercover officer," received $26 from City Detective Stringfellow with which to buy narcotics if he could find such. He picked up Edward Jordan, also known as Little Fat, and drove down Thomas Avenue in North Dallas.

They were flagged down by three people, one being Elizabeth Ann Johnson, and two males one called George. They said they wanted to go to South Dallas and got in the back seat. Neither of the parties knew that Dan Evans was seeking evidence for law enforcement officers.

They parked the car on Colorado Street in South Dallas and Elizabeth Ann Johnson got out, entered an apartment house and went upstairs to appellant's apartment. She remained some three minutes and came back to the car.

Two or three minutes later appellant backed his Pontiac car from the driveway and drove beside the car in which Dan Evans, Elizabeth Ann Johnson, Little Fat, George and the other man were seated. Dan Evans then handed Elizabeth Ann Johnson two ten dollar bills and a one dollar bill, out of the money furnished him by Detective Stringfellow, and George, another occupant of the car, gave her $10 "to buy him one capsule."

Elizabeth Ann Johnson then got out of Evans' car and into the car with appellant and they were looking at each other and glancing back to the Evans car and their lips were moving.

Appellant drove ahead of the Evans car some twenty-five or thirty feet, then backed up even with the Evans car, and Elizabeth Ann called to George and told him to stick his head out the window and he did so, and appellant was looking at George.

Appellant then drove ahead some fifty feet and after some motions were made by him and Elizabeth Ann, she returned to the Evans car and handed Dan Evans three capsules which proved to contain heroin. The capsules were thereafter delivered to Detective Stringfellow.

Dan Evans testified that he gave Elizabeth Ann Johnson $21 and she delivered to him three capsules, and George gave her $10 "to buy him one capsule" and he received one capsule and she returned to him $3; that she returned from appellant's car with five capsules, gave one to George, three to him (Dan Evans) and kept one for herself.

Elizabeth Ann Johnson, the accomplice witness, testified that she got in the car with Dan Evans and three others, one being George, and another Little Fat; that she got money from the four and bought "dope" from Johnny Hammonds (appellant); that she gave the money to appellant and got narcotics; that she gave the narcotics or whatever she got from appellant "to who it belonged to."

She further testified that she received $21 from Dan Evans and gave it to appellant in payment for narcotics, and that she did not get to keep any of it for herself. She also testified:

"Q. All right now, Elizabeth Ann, I will ask you if it's true or not, tell the jury whether or not this is true: that back on January 25, of 1957, you and Johnny Hammonds made a sale to this special officer, Dan Evans, for $21.00 and got three caps of * * * I'll leave it out * * * from Johnny Hammonds? * * * Do you want me to repeat the question? A. No. It's true."

On cross-examination she testifed:

"Q. * * * in other words as far as George was concerned, was George the one who was buying these capsules, as far as Johnny was concerned? A. That's right.

502

"Q.  Johnny didn't know anything at all about Dan Evans, did he?  A.  No. * * *

"Q.  You sold those capsules to Dan Evans yourself, didn't you?  A.  I guess I did.

"Q.  And then you sold some to George, isn't that correct * * * or Little Fat?  A.  That's right. Well, Little Fat is the one that Dan Evans had."

"Q.  You say that it is the truth that Johnny Hammonds was selling this narcotics, as far as he was concerned, to Little Fat. Isn't that correct?  A.  You mean that Johnny didn't know that Dan Evans was a policeman, is that what you mean?

"Q.  No. I mean that Johnny thought he was selling these capsules to Little Fat. Isn't that correct?  A.  I don't know because I think Johnny thought he was selling it to me.

"Q.  All right and then he didn't think he was selling it to any of these others.  A.  I don't think so."

We are impressed with the testimony to the effect that appellant backed up his car and required "George" to show himself while Elizabeth Ann was with him, before which she went to him with three ten dollar bills and an additional one, and after which she returned to the Evans car with three dollars in change for George, three caps of heroin for Dan Evans, one cap for George and one for herself.

No other explanation appears as to why appellant was interested in seeing George except that he thought that George was one who desired to purchase narcotics. No one else was in position to have received the money delivered to Elizabeth Ann by Dan Evans and George, and furnish the heroin in return therefor, except appellant.

If the transaction was simply a sale by appellant to Elizabeth Ann no reason appears why it could not have been consumated without appellant satisfying himself by a look at "George," or without him leaving his apartment.

We find the evidence sufficient to sustain the conviction, and hold that the testimony of Dan Evans corroborates the testimony of the accomplice witness.

Appellant, under the indictment, would be guilty as a principal in the unlawful sale: (1) If he was the seller and was aided in the sale by the accomplice witness; (2) If he and the accomplice witness made the sale jointly; or (3) If the accomplice witness made the sale to Dan Evans and appellant aided and encouraged the sale, knowing her intent. In either such event his conviction was authorized upon the facts and under the court's charge.

The judgment is affirmed.

DAVIDSON, Judge, dissenting.

The indictment alleged that "Johnny Hammonds [appellant] and Elizabeth Ann Johnson, acting together * * *, did sell to Dan Evans, a narcotic drug, to-wit, heroin * * * ."

Evans, the alleged purchaser, was a member of the police department of the city of Dallas and "was working with the narcotics section, making buys from dealers in narcotics undercover, without revealing [his] identity as a peace officer."

About 6:30 o'clock the evening of January 25, 1957, Evans, in accordance with a prior agreement or understanding, met Detective Stringfellow, of the Dallas police department, in the 1700 block of Kelly Street. Evans was driving a state-owned 1951 Ford two-door sedan. When they met at the appointed place a conversation ensued between them at the conclusion of which Stringfellow gave $26, in money belonging to the city of Dallas, to Evans with which to buy marihuana or any other narcotic.

Evans then drove to the 1700 block of the Good-Lattimer Expressway, in the vicinity of which a tavern was situated. He "just hung around for awhile there in the area," where he was joined by Edward Jordan, who was known as "Little Fat." Afterwards, Evans and he drove to the corner of Thomas Avenue and Ellis Street. When they arrived there they "were flagged down by three individuals," two males and a female. The female was the co-indictee here, Elizabeth Ann Johnson. One of the males was known as "George;" the name of the other man was not known. Evans, who was driving, and the other four, who were in the back of the car, then went to the 1600 block of Pine Street in the south part of Dallas and on to the 2800 block of Colonial Street, where they parked near the apartment house in which the appellant lived. The woman then went to appellant's apartment and returned, alone, to Evan's car in about three minutes.

Shortly thereafter, appellant backed his car from the drive-way of his place of residence and pulled alongside the car in which Evans and the others were seated. The woman got out of Evans's car and into appellant's car, at which time, Evans said, they engaged in some character of conversation. The woman then returned to the Evans car, whereupon Evans gave her $21. She then went back to appellant's car, after which she returned with three capsules of heroin and handed them to Evans.

The foregoing are the material facts in Evans's testimony.

It is significant to note that nowhere therein did he say he purchased the narcotics from the woman or that he asked or sought to purchase any narcotics from her. There is no explanation as to why or for what purpose Evans gave her the $21.

On the other hand, there is no testimony on the part of Evans that Elizabeth Ann Johnson was not purchasing the narcotics for him at his request and with the money furnished by him.

The coindictee, Elizabeth Ann Johnson, was an accomplice witness, as a matter of law. Herrera v. State, 115 Texas Cr. Rep. 526, 27 S.W. 2d 211; Otto v. State, 117 Texas Cr. Rep. 257, 36 S.W. 2d 177; West v. State, 117 Texas Cr. Rep. 340, 37 S.W. 2d 160.

The witness testified that on the night in question she was at home when Dan Evans and others came by her house and that she got in the car with them and drove to the home of appellant. I quote from her testimony as follows:

["Q. All right, and when you got there what did you do in connection with Johnny Hammonds?] A. Well, I got money and then I went and bought dope from Johnny.

["Q. All right now, who did you get the money from?] A. The four people in the car.

["Q. All right. And was Dan Evans one of those people?] A. He was.

["Q. All right, now you got the money and do you remember how much money it was?] A. $35.00.

["Q. You think it was $35.00. All right, and you then went

and took the money and bought what?] A.   Dope, narcotics.

["Q.   And who did you buy it from?] A.   Johnny Hammonds.

["Q.   All right, and I'll ask you if you then, you yourself gave the money to Johnny Hammonds?] A.   That's right.

["Q.   All right, and I'll ask you what you got from Johnny Hammonds?] A.   Narcotics."

The witness further testified:

["Q.   All right, I'll ask you what you did with the $21 that you got from Dan Evans?] A.   I gave it to Johnny.

["Q.   You gave it to Johnny Hammonds. Is that this defendant over here?] A.   That's right.

["Q.   All right, and that $21 was in payment for what; what what did you give it to Johnny Hammonds for?] A.   I got narcotics from him."

Upon recross examination the witness testified as follows:

"* * * * I think Johnny thought he was selling it [the narcotics] to me."

It is upon this testimony that the state relied to convict appellant of selling or of being a party to the sale of narcotics to Evans, the sufficiency of which testimony is challenged.

In his charge to the jury the trial court made appellant's guilt to depend upon an application of the law of principals—that is, that Elizabeth Ann Johnson sold the narcotics to Evans and that appellant, knowing her unlawful intent in that sale, aided her by acts or encouraged her by words in that unlawful act. In connection with that charge, the jury were also told that if they entertained a reasonable doubt as to whether appellant knew of the unlawful intent of Elizabeth Ann Johnson in making the sale of the narcotics, if she did, that appellant would not be guilty.

To meet the demands of that charge the state was required to prove, first, that Elizabeth Ann Johnson sold narcotics to

Evans, and, second, that if she did make the sale appellant had knowledge of that fact and aided her in making such sale.

There is not a line of testimony that the woman sold the narcotics to Evans. At no time did Evans claim that he was buying the narcotics from her or that he gave the $21 to her as the purchase price, from her, of the narcotics.

It must be remembered that to constitute a sale, in criminal law, there must exist the relationship of purchaser and seller and there must be an agreed transfer of property for a consideration moving from the purchaser to the seller. Branch's P.C., Sec. 1318.

It is apparent, therefore, that Evans's testimony does not show a purchase by him of any narcotics from Elizabeth Ann Johnson. To the contrary, his testimony is susceptible of but one construction—which is that Evans gave the woman the money with which she was to make the purchase of narcotics from the appellant.

Obviously, Elizabeth Ann Johnson could not be both purchaser and seller of the narcotics. Her testimony is that she purchased the narcotics from appellant with the money Evans and others had given her and that appellant thought he was selling the narcotics to her. At no time does she suggest that there was any kind of agreement or understanding, or otherwise, that she would sell narcotics to Evans as a joint enterprise between her and the appellant.

The evidence not only fails to show that the co-indictee, Elizabeth Ann Johnson, sold narcotics to Evans but it conclusively shows that she purchased the narcotics from appellant with the money Evans had given her. Inasmuch as she did not sell narcotics to Evans, appellant could not have aided or encouraged her as a principal in the doing of that which she did not do.

The state failed, therefore, to prove the first element of the offense—that is, that Elizabeth Ann Johnson sold the narcotics to Evans.

The second element of the offense—that is, appellant's knowledge of the fact that Elizabeth Ann Johnson made a sale—is not only shown but is wholly disproved by her testimony wherein she says that she purchased the narcotics from appellant and that appellant thought he was making the sale to her.

Having predicated its case upon the allegation of the indictment that Elizabeth Ann Johnson and appellant sold the narcotics as a joint undertaking, the state is bound to sustain that that allegation by the evidence. This it failed to do.

A conviction for selling narcotics may not be had upon the uncorroborated testimony of an accomplice.

There is an absence of any testimony corroborating the accomplice, here, as to the guilt of this appellant.

The state had proof from Elizabeth Ann Johnson that she purchased the narcotics from the appellant, for which sale the state could have prosecuted the appellant. This the state refused to do.

I respectfully dissent.

### ON MOTION FOR REHEARING

BELCHER, Judge.

Appellant strenuously insists that the evidence is insufficient to show that he and Elizabeth Ann Johnson, acting together, sold heroin to Dan Evans, as alleged.

It appears from the record that the appellant had heroin in his possession at the time and place in question. The evidence shows that a sale of heroin was made. Both the appellant and Elizabeth Ann Johnson were present at the time of the delivery of the heroin to Dan Evans. She gave the appellant $21 which she had received from Evans. Then, after appellant had observed George and the occupants of the Evans car, Elizabeth Ann Johnson made the delivery of heroin to Evans.

The facts and circumstances surrounding the delivery of the heroin are sufficient to warrant the jury's finding that the sale was made as alleged.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.